**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARRIE HAGER, <br><br> Plaintiff, <br><br> v. <br><br> SELENE FINANCE LP and CITIMORTGAGE, INC., <br><br> Defendants. | Civ. Action No. 19-13650 (FLW) <br><br> **OPINION** |

**WOLFSON, Chief Judge:**

In this action, *pro se* plaintiff Carrie Hager ("Plaintiff") has sued defendants Selene Finance LP ("Selene Finance") and CitiMortgage, Inc. ("CitiMortgage") (collectively, "Defendants") for alleged misconduct by Defendants in the servicing of Plaintiff's mortgage. In her operative Amended Complaint, Plaintiff asserts a claim under the New Jersey Consumer Fraud Act ("CFA"), premised on Defendants' failure to honor a loan modification that was allegedly offered to Plaintiff by CitiMortgage. This matter comes before the Court on two separate motions by Defendants to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Having considered the parties' submissions, the Court finds that Plaintiff's claim under the CFA is barred by New Jersey's "entire controversy doctrine." Therefore, for the reasons set forth below, Defendants' motions are **GRANTED**.

1

I.     **BACKGROUND AND PROCEDURAL HISTORY**[1]

On May 6, 2008, Plaintiff's husband, Donald Hager ("Mr. Hager") was approved for a $195,000 mortgage loan (the "Loan") from Defendant CitiMortgage for the purchase of a property located at 57 Washington Avenue in Leonardo, New Jersey (the "Property"). (AC ¶ 6; SBB Decl. ¶ 2, Ex. A; SJS Decl., ¶ 2, Ex. A.)[2]  Mr. Hager subsequently executed a mortgage note for the Loan. (SBB Decl. ¶ 2, Ex. A; SJS Decl., ¶ 2, Ex. A.)  Both Mr. Hager and Plaintiff signed the mortgage document giving security interest in the Property to CitiMortgage. (SJS Decl., ¶ 3, Ex. B.)  Thereafter, Mr. Hager became delinquent on the Loan. (Amended Compl. ¶ 7.)  On March 12, 2010, defendant CitiMortgage filed a foreclosure complaint related to the Property in the New Jersey Superior Court, Monmouth County ("State Foreclosure Action"), naming both Plaintiff and Mr. Hager as defendants. (SBB Decl., ¶ 3, Ex. B; SJS Decl., ¶ 8, Ex. G.)  On December 5, 2014, the New Jersey Superior Court entered a final judgment of foreclosure in favor of CitiMortgage and issued a writ of execution directing that the Property be sold by the County Sheriff at a foreclosure sale. (SBB Decl., ¶ 4, Ex. C; SJS Decl., ¶ 9, Ex. H.)  On October 17, 2016, the County Sheriff sold the Property to Wilmington Saving Fund Society (the "Sheriff's Sale"). (SBB Decl.,

---

[1]    I accept the factual allegations in the Complaint as true and recount those allegations and the procedural history of this case to the extent it is relevant for determining the present motions. I also note that Defendants have attached various documents to their briefs, including court documents filed in state and federal court, that relate to the allegations in the Complaint. For the purposes of the present motions, I will consider those documents to the extent they are "integral to or explicitly relied upon in the Complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted); *see also In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) (stating that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document") (citation omitted).

[2]    References to "AC" are to Plaintiff's Amended Complaint (ECF No. 25); references to "SBB Decl." are to the Declaration of Scott B. Brenner in Support of CitiMortgage's Motion to Dismiss (ECF 29-1); and references to "SJS Decl." are to the Declaration of Stephen J. Steinlight in Support of Selene Finance's Motion to Dismiss (ECF No. 35-1).

¶ 6, Ex. E; SJS Decl., ¶ 10, Ex. I.)  On July 13, 2017, the Clerk for Monmouth County recorded a Deed of Foreclosure for the Property.  (SBB Decl., ¶ 6, Ex. E; SJS Decl., ¶ 10, Ex. I.)

In the Amended Complaint, Plaintiff alleges that, prior to the Sheriff's Sale, in a letter dated July 7, 2015, CitiMortgage offered Plaintiff a trial mortgage modification at a 6.5% interest rate, with three monthly trial payments of $2,746.43 due on August 1, 2015; September 1, 2015; and October 1, 2015.  (AC ¶ 8.)  Plaintiff further alleges that she timely made all three trial payments.  (*Id.*)  According to the Amended Complaint, on September 17, 2015, CitiMortgage sent Plaintiff a billing statement indicating that the outstanding principal balance of the Loan was $191,311.80.  (AC ¶ 9.)  Plaintiff alleges that, on October 16, 2015, CitiMortgage sent her a loan modification agreement stating that CitiMortgage intended to modify the loan.  (AC ¶ 10.)  According to Plaintiff, this "[p]ermanent" modification offered a 6.5% interest rate on a principal balance of $307,931.05, with a monthly payment of $1,802.80.  (*Id.*)  Plaintiff alleges that the permanent modification "recapitalized all previous past amounts that were due" on the Loan.  (*Id.*)  Plaintiff alleges that she "subsequently sought information from [CitiMortgage] as to why the Loan's principal balance [had] increased by $116,619.25 in less than one month," *i.e.*, from $191,311.80 to $307,931.05.  (*Id.*)  Plaintiff alleges that, as of the filing of the Amended Complaint, CitiMortgage "has not provided a detailed accounting or explanation" for the increase in the principal balance of the Loan.  (*Id.*)[3]

---

[3]   In the Amended Complaint, Plaintiff states that CitiMortgage offered the trial modification to "Plaintiff," and that CitiMortgage sent the billing statement and loan modification agreement to "Plaintiff." In support of these allegations, Plaintiff attaches, to the Amended Complaint, the correspondence from CitiMortgage regarding the trial modification, as well as copies of the billing statement and loan modification agreement (which is unsigned) that were sent by CitiMortgage.  (*See* AC, Exs. 1, 2, & 3.)  The Court notes that a review of those documents indicates that the trial modification was offered only to her husband, Mr. Hager, and that the loan modification agreement and the billing statement were also addressed only to Mr. Hager.  Indeed, Plaintiff's own name, *i.e.*, Carrie Hager, appears nowhere on those documents.

Meanwhile, on December 1, 2015, Plaintiff alleges that CitiMortgage transferred the servicing rights to the Loan to defendant Selene Finance. (*Id*. at ¶ 11.) Plaintiffs alleges that after the Loan was transferred, Selene Finance "refused to honor" the loan modification reached with CitiMortgage. More specifically, Plaintiff alleges that, on February 19, 2016, Selene Finance "offered Plaintiff a trial modification requiring [her] to make a $6,000.00 payment towards the Loan's 'suspense' by February 20, 2016, and three additional trial payments of $2,885.86 by April 1, 2016; May 1, 2016; and June 1, 2016[,] respectively." (*Id*. at ¶ 12.)[4] According to Plaintiff's Amended Complaint, this proposed trial modification was an attempt by Selene Finance to bill Mr. Hager for past escrow amounts, even though the permanent modification reached with CitiMortgage would have recapitalized all such amounts due prior to October 16, 2016. (*Id*.) Plaintiff further alleges that, at some unspecified time after Selene Finance assumed the servicing rights to the Loan, Plaintiff again requested that both CitiMortgage and Selene Finance provide a detailed accounting of how past payments have been applied to the loan balance. (*Id*. at ¶ 14.) Plaintiff alleges that, to date, neither CitiMortgage nor Selene Finance has provided such an accounting. (*Id*.) Plaintiff further asserts that she "justifiably relied on Defendants' omissions and misrepresentations and suffered ascertainable damages as a result of such reliance" by having "been forced to pay amounts towards the Loan that are higher than the contractually agreed amounts." (*Id*. at ¶¶ 22, 24.) Plaintiff also claims that, as "a direct cause of Defendants misconduct," she "has suffered severe anxiety and severe emotional distress." (*Id*. at ¶ 24.)[5]

---

[4] In support of this allegation, Plaintiff attaches, to the Amended Complaint, a copy of the "trial modification plan" that was offered by Selene Finance. (*See* AC, Ex. 4.) As with the allegations related to CitiMortgage's alleged misconduct, a review of the trial modification plan shows that Selene Finance sent the document to only to Mr. Hager, and not to Plaintiff.

[5] Separate from her allegations relating to Defendant's failure to honor the loan modification, Plaintiff also includes several other allegations in the Amended Complaint. First, Plaintiff alleges that, on February 23, 2016, she and her husband Mr. Hager sent Selene Finance a "qualified written response" (sic)

*(Footnote continues on next page.)*

4

On June 11, 2019, Plaintiff, along with her husband, Mr. Hager, commenced the instant action. In their original complaint, Plaintiff and Mr. Hager asserted claims under the New Jersey Consumer Fraud Act (CFA) and the New Jersey Fair Foreclosure Act (FFA). (*See* ECF No. 1.) On July 24, 2019, CitiMortgage and Selene Finance moved to dismiss the original complaint and, on February 19, 2020, the Court entered an order granting their motions. (*See* ECF No 21.) The Court dismissed Mr. Hager's claims with prejudice; however, Plaintiff was given leave to amend her CFA claim (but not her FFA claim) to the extent that such claim is "based on the alleged failure by Defendants to honor the loan modification." (*Id.* at 19.)

On March 9, 2019, Plaintiff filed the operative Amended Complaint, in which she seeks to replead her claim under the CFA. As for relief, Plaintiff seeks an injunction enjoining Defendants from engaging in any foreclosure activity with respect to the Property, punitive damages, special damages for Plaintiff's alleged emotional distress, attorney's fees and costs, and a detailed accounting of how Defendants have applied all payments made towards the Loan. (*See* Amended Compl., Section VI. (Prayer for Relief).) On March 24, 2020, CitiMortgage filed its motion to dismiss (*see* ECF No. 29), and, on May 21, 2020, Selene Finance filed its motion to dismiss (*see* ECF No. 35). Plaintiff opposes both motions. (*See* ECF Nos. 33, 39.)

---

per the Real Estate Settlement Procedures Act ("RESPA"), requesting copies of various documents. (AC ¶ 13.) According to Plaintiff, Selene Finance has not provided any of the requested documents. (*Id.*) Second, Plaintiff alleges that "Selene has forced placed an insurance policy on the Loan," and that, "[s]ince Plaintiff maintains a separate homeowner's insurance policy, Plaintiff has requested [that] Selene remove [a] force placed insurance policy to no avail." (*Id*. at ¶ 15.) Finally, Plaintiff alleges that she "has requested [that] Selene disclose the identity of the current investor of the Loan so that Plaintiff could properly enforce her legal rights against all relevant parties," but that, "[t]o date, Selene has refused to provide the name of the current investor of the Loan." (*Id*. at ¶ 16.) The relevance of these allegations to Plaintiff's claim under the CFA is unclear. Indeed, the Court has only given Plaintiff leave to amend her complaint to the extent that "her CFA claim [is] based on the alleged failure by Defendants to honor the loan modification." (*See* February 19, 2020 Opinion at 19, ECF No. 20.) Because Plaintiff does not explain the relevance of these allegations to the loan modification, the Court does not consider them for the purposes of deciding the present motions.

## II.     STANDARDS OF REVIEW

Defendants move to dismiss the Amended Complaint for lack of jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The following legal standards apply.

### A.     Rule 12(b)(1)

Rule 12(b)(1) mandates dismissal of an action where a federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (noting that federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto"). Once a 12(b)(1) challenge is raised, the burden shifts to the plaintiff to demonstrate the existence of subject matter jurisdiction. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).

In deciding a Rule 12(b)(1) motion, a district court may treat a party's motion as either a "facial" or "factual" challenge to the court's jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016); *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould*, 220 F.3d at 176 (citations omitted). "In reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.* When a motion is treated as a factual challenge, a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and "[n]o presumptive truthfulness attaches to [the] plaintiff's allegations." *Davis*, 824 F.3d at 346 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

### B.      Rule 12(b)(6)

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although the court must accept the allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (citation omitted). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Additionally, although "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings," the court may consider documents that are "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted); *see also In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document") (citation omitted).

The Court must also be cognizant of the fact that the plaintiff in this case is proceeding *pro se* in this action. "The obligation to liberally construe a *pro se* litigant's pleadings is well-established." *Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011); *see also Estelle*

*v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "Courts are to construe complaints so as to do substantial justice, keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (internal quotation marks and citation omitted). "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Moreover, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Indeed, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282.

### III.  DISCUSSION

#### A.  Plaintiff Has Standing to Assert a Claim under the CFA

In their motions, CitiMortgage and Selene Finance both argue that Plaintiff lacks "standing" to bring her claim under the CFA. (Memorandum of Law Supporting Defendant CitiMortgage, Inc.'s Motion to Dismiss ("Citi Br."), at 5, ECF No. 30; Memorandum of Law in Support of Defendant Selene Finance LP's Motion to Dismiss ("Selene Br."), at 8, ECF No. 35). Defendants argue that Plaintiff lacks standing because the loan modification was addressed solely to Mr. Hager, and because only Mr. Hager, and not Plaintiff, signed the mortgage note for the Loan. (Citi Br. at 6-7; Selene Br. at 8).

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S.

Ct. 1540, 1547 (2016). "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)). "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*.

In this case, although Defendants do not identify in their motions which element of the standing doctrine they believe is lacking, they appear to challenge Plaintiff's standing based on the first element: the requirement that Plaintiff allege an injury-in-fact. "The purpose of the injury-in-fact requirement, the Supreme Court has explained, is to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem." *Cottrell v. Alcon Labs.*, 874 F.3d 154, 162 (3d Cir. 2017) (internal quotation marks omitted). "The injury-in-fact requirement is very generous to claimants, demanding only that the claimant allege some specific, identifiable trifle of injury." *Id*. (internal quotation marks omitted). "Typically, a plaintiff's allegations of financial harm will easily satisfy" each element of standing. *Id*. at 163.

In their respect briefs, both CitiMortgage and Selene Finance cite to *Fagan v. Fischer*, No. 14-7013, 2019 WL 5587286, at *6 (D.N.J. Oct. 30, 2019), for the proposition that "'[o]ne who is not a party to a contract has no status to sue upon it if he be a person with whom the contracting parties never meant to come into contractual relations.'" (*See* Citi Br. at 6; Selene Br. at 8.) However, contractual relations between parties are not necessary for standing when a statute like the CFA does not require privity between a plaintiff and a defendant. *See Slebodnik v. Reynolds*

9

*& Reynolds Co.*, No. 14-03772, 2014 WL 6609132, at *4 (D.N.J. Nov. 20, 2014) (noting that "the NJCFA does not require a direct relationship, whether it is called privity or not, between the plaintiff and the defendant"); *Zafarana v. Pfizer Inc.*, 724 F. Supp. 2d 545, 556 (E.D. Pa. 2010) (stating that "the plaintiff need not be in privity with the defendant in order to bring a claim" under the NJCFA"); *Katz v. Schachter*, 251 N.J. Super. 467, 474 (App. Div. 1991) (stating that "privity is not a condition precedent to recovery under the [NJCFA]"). For example, in *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 564-65 (2011), the plaintiff had pledged her home as collateral for a mortgage loan, but she had not signed the note and was not personally liable for making the mortgage payments. After the debtor died, the plaintiff continued to reside in the home and pay down the loan. *Id*. at 565. Later, the plaintiff asserted a CFA claim related to the defendants' deceptive practices in connection with a loan modification. *Id*. at 568-69. In ruling for the plaintiff, the New Jersey Supreme Court held that "[w]e need not address whether [the defendant] had a direct relationship with plaintiff, whether called privity or not," because contractual privity is not necessary to bring a CFA claim. *Id*. at 579.

Here, Plaintiff has alleged an injury-in-fact sufficient to obtain standing to assert a CFA claim. Plaintiff alleges that she suffered economic damages by being forced to make unjustly high loan payments as a result of Defendants' refusal to honor the permanent loan modification. (AC ¶ 24.) In particular, Plaintiff has pled that CitiMortgage raised the principal balance on the Loan without explanation, and that Selene Finance billed Plaintiff for past escrow amounts that should have been capitalized. (AC ¶¶ 10, 12). Also, like the plaintiff in *Gonzalez*, Plaintiff alleges that she made mortgage payments despite not signing the note for the Loan. In this case, even though only Mr. Hager signed the mortgage note for the Loan (*see* SBB Decl. ¶ 2, Ex. A; SJS Decl., ¶ 2, Ex. A) and was the sole recipient of the loan modification proposal (*see* AC, Ex. 1),

10

Plaintiff has standing because contractual privity is not necessary to assert a CFA claim, and because she has sufficiently alleged that she suffered economic damages. Accordingly, the Court finds that Plaintiff has sufficient standing.[6]

### B. Plaintiff's Claim is Barred by the Entire Controversy Doctrine

CitiMortgage and Selene Finance also argue that the Amended Complaint must be dismissed because Plaintiff's CFA claim is barred by New Jersey's "entire controversy doctrine." (Citi Br. at 7; Selene Br. at 9). According to Defendants, Plaintiff was required under the entire controversy doctrine to raise her claims related to the loan modification during the State Foreclosure Action. (*Id.*) In response, Plaintiff argues that the entire controversy doctrine does not apply to her claims, because they arose after the final judgment of foreclosure was entered in the State Foreclosure Action on December 5, 2014. (Plaintiff's Opposition Brief ("Pl. Br.") at 6-7, ECF No. 33). Plaintiff further contends that, since the servicing rights to the Loan were transferred to Selene Finance on December 1, 2015, she could not have brought a claim for failure to honor the loan modification as part of the state court foreclosure action. (*Id.*)

The entire controversy doctrine compels the parties, when possible, to bring all claims relevant to the underlying controversy in one legal action. *See Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp.*, 446 F. App'x 469, 471 (3d Cir. 2011). When the court finds that a claim not joined under the original action falls within the scope of the doctrine, that

---

[6] In their motions, Defendants also argue that Plaintiff's claim is barred by the *Rooker-Feldman* Doctrine, because it would require the Court to review and reject the foreclosure judgment of the state court entered in the State Foreclosure Action. (Citi Br. at 9; Selene Br. at 13.) The Court previously rejected this argument in its February 19, 2020 Opinion dismissing Plaintiff and Mr. Hager's first complaint. As discussed in that opinion, the *Rooker-Feldman* doctrine does not apply when "a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment." (February 19, 2020 Opinion at 13, ECF No. 20.) In this case, the harm alleged by Plaintiff in the Amended Complaint was not caused by the judgment of foreclosure, but rather by Defendants' subsequent actions in allegedly overcharging Plaintiff on loan payments. Accordingly, for the same reasons that the *Rooker-Feldman* doctrine did not apply to Mr. Hager's claims, it also does not apply to Plaintiff's claims.

claim is barred. N.J. Ct. R. 4:30A. *Id.* The doctrine "seeks to further the judicial goals of fairness and efficiency by requiring, whenever possible, that the adjudication of a legal controversy should occur in one litigation in only one court." *Id.* (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 662 A.2d 509, 513 (1995)). The doctrine is also applicable to New Jersey claims brought in federal court. *Id.* (citing *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir.1991).) However, application of the entire controversy doctrine is "equitable in nature" and based substantially on "judicial fairness," meaning that the Court must balance considerations of judicial efficiency as well as fairness to the litigants. *Id.* (citing *Cafferata v. Peyser*, 251 N.J. Super. 256, 597 A.2d 1101, 1103 (1991)).

New Jersey courts have held that the primary consideration in determining if successive claims are part of the same controversy is whether the claims "arise from related facts or from the same transaction or series of transactions." *Id.* (quoting *DiTrolio v. Antiles*, 142 N.J. 253, 662 A.2d 494, 502 (1995). It is a "commonality of facts, rather than [a] commonality of issues, parties, or remedies that defines the scope of the controversy." *Id.* (citing *DiTrolio*, 662 A.2d at 504). The limits of the entire controversy doctrine with regards to foreclosure actions are necessarily somewhat narrower, as N.J. Ct. R. 4:64–5 requires that only "germane" counterclaims may be joined in a foreclosure action. *Id.* (citing N.J. Ct. R. 4:30A). Claims are considered to be "germane" to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action. *Id.* (citing *Leisure Technology–Northeast, Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 349 A.2d 96, 98 (App Div. 1975)).

In *Coleman*, a plaintiff-homeowner had defaulted on a mortgage loan which had been assigned to the defendant. *Id.* As a result, the defendant-assignee of the mortgage note filed a foreclosure action in New Jersey state court, and judgment was entered in favor of the defendant-

12

assignee. *Id.* However, the foreclosure sale was stalled while the plaintiff-homeowner initiated bankruptcy proceedings. *Id.* During this period, the defendant-assignee sent a quote to reinstate the mortgage for a lump-sum payment, which the plaintiff made. *Id.* Two years later, the plaintiff-homeowner filed suit in federal court, alleging that the defendant-assignee overcharged her to reinstate the mortgage. *Id*. at 471. In dismissing the plaintiff-homeowner's claims under the entire controversy doctrine, the *Coleman* court first found that the claims were "germane" to the state foreclosure action. *Id*. at 472. The plaintiff's claims in the federal action arose out of a restatement quote offered as an alternative to a foreclosure sale, and the quote would not have been charged but for the foreclosure action, so the claims arose out of the same series of transactions. *Id*.

Additionally, the *Coleman* court held that the entire controversy doctrine barred the plaintiff-homeowner's claims under the CFA in the federal action even though those claims accrued after the pendency of the original state foreclosure action, because a New Jersey court "retains jurisdiction in a foreclosure action even after a final judgment, until delivery of the sheriff's deed." *Id*. (citing N.J. Ct. R. 4:65-5); *see also Sovereign Bank v. Kuelzow*, 297 N.J. Super. 187, 197 (App. Div. 1997) ("The foreclosure action, although already the subject of a judgment, is not totally concluded until the defendants' equity of redemption is cut off by the delivery of the sheriff's deed"). Since the plaintiff-homeowner could have brought her claims as part of the original foreclosure action, even after the state court judgment had been entered, her federal action was barred by the entire controversy doctrine. *Coleman*, 446 F. App'x at 472; *see also US Bank Nat. Ass'n v. Guillaume*, 209 N.J. 449, 467 (2012) (explaining that a party may challenge a final judgment of foreclosure under N.J. Ct. R. 4:50-1 based on fraud, misrepresentation, or other misconduct of an adverse party).

13

The Court finds the analysis in *Coleman* instructive in deciding the present motions to dismiss. Like the plaintiff-homeowner's CFA claim in *Coleman*, Plaintiff's CFA claim in this case is similarly "germane" to the State Foreclosure Action, to which Plaintiff was a party. Indeed, Plaintiff's claim in this case arises out of the same mortgage loan at issue in the State Foreclosure Action, so it is based on the same series of transactions. As in *Coleman*, Plaintiff's claim is based on allegedly being overcharged for a modification of a mortgage loan offered as an alternative to a foreclosure sale. In particular, Plaintiff alleges that CitiMortgage offered Mr. Hager a permanent modification to the Loan, but did not adequately explain why the principal balance increased by $116,619.25. (AC ¶ 10.) Moreover, Plaintiff alleges that after the servicing rights to the Loan were assigned to Selene Finance, Selene Finance attempted to bill Plaintiff for past escrow amounts and refused to honor Citi's permanent modification. (AC ¶ 11-12.) Since the permanent modification would not have been offered but for the loan delinquency, Plaintiff's claim is germane to the State Foreclosure Action.

Like the plaintiff in *Coleman*, Plaintiff argues that the entire controversy doctrine cannot apply to her CFA claim, because the loan modification occurred after the State Foreclosure Action. CitiMortgage filed a foreclosure complaint on March 12, 2010 in the New Jersey Superior Court, Monmouth County, which entered a final judgment of foreclosure in favor of CitiMortgage on December 5, 2014. (SBB Decl. ¶ 3, Ex. B; ¶ 4, Ex. C.) Thereafter, CitiMortgage allegedly informed Mr. Hager, on October 16, 2015, of the permanent modification to the Loan. (AC ¶ 10.) CitiMortgage then transferred the servicing rights to the Loan to Selene Finance on December 1, 2015, and Selene Finance allegedly offered Mr. Hager a trial modification on February 19, 2016, that differed from Citi's permanent modification. (AC ¶ 11-12.) While the failure to honor the permanent modification allegedly occurred after final judgment was entered in the State

14

Foreclosure Action, it preceded the Sheriff's Sale of the Property (which occurred on October 17, 2016) and the delivery of the Sheriff's Deed of Foreclosure (which was recorded on July 13, 2017). (SBB Decl., ¶ 6, Ex. E; SJS Decl., ¶ 10, Ex. I.) Since the New Jersey Superior Court retained jurisdiction over the State Foreclosure Action until delivery of the Sheriff's Deed of Foreclosure, Plaintiff could have made a motion pursuant to N.J. Ct. R. 4:50-1 to vacate the final judgment of foreclosure based on Defendants' alleged misconduct. Therefore, as in *Coleman*, since Plaintiff's claim in this case arose from events that occurred before delivery of the Sheriff's Deed of Foreclosure, Plaintiff could have brought her claims as part of the original foreclosure action. In conclusion, Plaintiff's claim is barred by the entire controversy doctrine because it is germane to the State Foreclosure Action and could have been raised in that action.

## IV.   CONCLUSION

In summary, the Court finds that, while the Court has subject-matter jurisdiction, Plaintiff's claim under the CFA is nevertheless barred by the entire controversy doctrine. Accordingly, Defendants' motions to dismiss are **GRANTED**, and Plaintiff's Amended Complaint is dismissed with prejudice. An appropriate order accompanies this Opinion.

DATED: September 10, 2020

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge